UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                                          Case # 20-CR-243-FPG-MWP


                                                            DECISION AND ORDER

DENNIS NELSON,
                              Defendant.


## INTRODUCTION

Defendant Dennis Nelson[1] is charged in a six-count Indictment with (1) three counts of threatening to murder a United States official or a United States judge with intent to impede, intimidate, or interfere with such official or judge while engaged in the performance of official duties in violation of 18 U.S.C. § 115(a)(1)(B); and, because those threats were sent via mail, with (2) three counts of knowingly depositing in an authorized depository for mail matter to be sent and delivered by the Postal Service, and knowingly causing to be delivered by the Postal Service according to the direction thereon, a communication addressed to a United States judge, or to an officer or employee of the United States Government engaged in the performance of his official duties, that contained a threat to injure the person of the addressee and of others, for the purpose of issuing a threat in violation of 18 U.S.C. § 876(c).[2]  ECF No. 1.

---

[1] Defendant is transgender, and this Court will use female pronouns to refer to her, as her attorney and the forensic psychologist did during the competency hearing, and as United States Magistrate Judge Marian W. Payson did in her Report & Recommendation.

[2] Defendant allegedly sent letters threatening to murder Hon. Thomas J. McAvoy, Senior United States District Judge in the Northern District of New York, United States Congressman Anthony Brindisi, and United States Senator Charles Schumer.  ECF No. 1.

By Order dated November 16, 2020, this case was reassigned to this Court based on a designation from the United States Court of Appeals for the Second Circuit. ECF No. 6. The matter was subsequently referred to United States Magistrate Judge Marian W. Payson for pretrial matters pursuant to 28 U.S.C. § 636(f). ECF No. 17.

On July 30, 2021, pursuant to defense counsel's motion, Judge Payson ordered, *inter alia*, (1) a hearing to determine Defendant's mental competency pursuant to 18 U.S.C. § 4241; and (2) prior to such hearing, a psychiatric or psychological examination of Defendant be conducted on the issues of competency, pursuant to 18 U.S.C. § 4241(b), and insanity, pursuant to 18 U.S.C. § 4242(a). ECF No. 27 at 1-4.

Defendant was evaluated from September through November 2021 and a psychiatric report and an addendum were filed on April 14, 2022. ECF No. 44; ECF No. 45. On May 5, 2022, Judge Payson conducted a competency hearing. ECF No. 49. Defense counsel filed post-hearing briefing and the Government filed a one-paragraph letter "referring the Court to the evidence submitted at the hearing . . . , which included the testimony of Dr. Mariam Kissin, as well as Dr. Kissin's psychological evaluation report of the defendant[.]" ECF No. 50; ECF No. 51.

On August 29, 2022, Judge Payson issued a Report & Recommendation ("R&R") recommending that this Court find "by a preponderance of the evidence that Nelson is not presently suffering from a mental disease or defect that would render her incompetent." ECF No. 52 at 24. Defendant filed objections to the R&R on September 26, 2022, requesting that this Court decline to adopt the R&R and instead find that Defendant is incompetent to stand trial. ECF No. 55 at 2. Specifically, defense counsel objects to the R&R's findings that "(1) [Defendant] is not intellectually disabled; (2) [Defendant] understands the charges against her and the possible consequences; and (3) [Defendant] is able to assist in her defense. *Id.*

2

The Government did not respond to Defendant's objections.  For the reasons that follow, the Court ADOPTS Judge Payson's R&R and Defendant's motion is DENIED.

## LEGAL STANDARD

"Under Federal Rule of Criminal Procedure 59, a magistrate judge may determine 'any matter that does not dispose of a charge or defense.'"  *United States v. Brennan*, 354 F.Supp.3d 250, 258 (W.D.N.Y. 2019) (quoting Fed. R. Crim. P. 59(a)).  "A party may file objections to a non-dispositive ruling by a magistrate judge, and the district judge will review the order and set aside or modify any part of it that 'is contrary to law or clearly erroneous.'"  *Id.*  "With respect to dispositive matters, a magistrate judge may conduct proceedings and issue a recommendation to the district judge."  *Id.* (citing Fed. R. Crim. P. 59(b)(1)).  A district court reviews a magistrate judge's recommendation on a dispositive matter to which a party has timely objected *de novo*.  Fed. R. Crim. P. 59(b)(3).  After reviewing the R&R and the objections thereto, a district court "may accept, reject, or modify the recommendation."  Fed. R. Crim. P. 59(b)(3).

## DISCUSSION[3]

"It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial."  *United States v. Pfeiffer*, No. 16-CR-23, 2018 WL 8544778, at *2 (W.D.N.Y. Dec. 18, 2018).  "For a defendant to be found competent to stand trial, he must have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him."  *Id.* (citation & internal quotation marks omitted).  "It is well-

---

[3] The Court assumes the parties' familiarity with the underlying facts and full record of prior proceedings in this matter, which are more fully set out in Judge Payson's R&R.  *See* ECF No. 52.

established that some degree of mental illness cannot be equated with incompetence to stand trial." *United States v. Wolfson*, 616 F.Supp.2d 398, 415 (S.D.N.Y. 2008).

A court may consider its own observations as well as medical opinions in determining competency. *Pfeiffer*, 2018 WL 8544778, at *2. "It is within the Court's discretion to credit one medical opinion over another." *Id.* A court's competency determination is made based upon the preponderance of the evidence.[4] *Id.* (citing 18 U.S.C. § 4241(d)).

Defense counsel timely objected to Judge Payson's competency determination.[5] ECF No. 53. Specifically, defense counsel argues that Judge Payson erred when she found (1) that Defendant is not intellectually disabled; (2) Defendant understands the charges against her and the possible consequences; and (3) Defendant is able to assist in her defense. ECF No. 55 at 2. The Court considers each of these objections in turn.

## I.    Intellectual Disability

In the R&R, Judge Payson credited the medical opinion of Miriam Kissin, Psy.D., that, while Defendant's intellectual functioning is "borderline," she is not disabled.[6] ECF No. 52 at 14. Defense counsel objects to Judge Payson's finding that Defendant is not intellectually disabled.

First, defense counsel contends that Dr. Kissin's opinion that Defendant's intellectual functioning is "borderline"—rather than disabled—is based upon an IQ test administered in 1992.

---

[4] "Whether the Government or the defense bears the burden of proof with respect to competency is unsettled, but 'the allocation of the burden of proof . . . affect[s] competency determinations only in a narrow class of cases where the evidence is in equipoise.'" *United States v. Marmolejos*, No. 18-CR-303-1, 2019 WL 2191139, at *1 n.1 (S.D.N.Y. May 21, 2019) (citing *United States v. Nichols*, 56 F.3d 403, 410 (2d Cir. 1995)) (citation omitted). Here, the Court need not resolve this question because this is not such a case.

[5] Defendant's objections were initially due September 12, 2022. However, Defendant sought, and was granted, a two-week extension of time to file objections through September 26, 2022. ECF No. 53; ECF No. 54. Defendant timely filed objections on September 26, 2022. ECF No. 55.

[6] Dr. Kissin is a forensic psychologist at the Federal Medical Center in Devens, Massachusetts, who evaluated Defendant from September 9 to November 30, 2021 and issued a Forensic Report in this case. ECF No. 44; ECF No. 49 at 66.

ECF No. 55 at 5.  Judge Payson specifically noted that, while Dr. Kissin's opinion that Defendant's intellectual functioning is borderline is "based upon previous cognitive testing" that is "dated," the result of such testing "is not subject to change over time, according to Dr. Kissin."  ECF No. 52 at 14 (citing ECF No. 49 at 66).  The Court credits Dr. Kissin's expertise in this regard and finds that Defendant's IQ test is indeed indicative of borderline intellectual functioning—rather than intellectual disability—as Dr. Kissin opined.[7]

Dr. Kissin further opined that when an individual's IQ test score is on the borderline, the person's "adaptive functioning" is what determines whether or not the individual is deemed to have "borderline" intellectual function or deemed to be intellectually disabled.  ECF No. 49 at 60-61.  In her testimony, Dr. Kissin characterized Defendant's "adaptive functioning as adequate in the setting that she's in." *Id.* at 62.  Moreover, she opined "that [Defendant's] adaptive functioning is not showing that she's functioning at a lower level than her IQ score" and that she is "functioning very consistently with someone in the borderline range." *Id.* at 63.

In the R&R, Judge Payson rejected defense counsel's argument, noting an "absence of more specificity linking the maladaptive behaviors to intellectual functioning."  ECF No. 52 at 15.  Defense counsel now contends that a preponderance of the evidence demonstrates that Defendant's "adaptive functioning is seriously impaired and, as a result, she meets the DSM definition of intellectual disability."[8]  ECF No. 55 at 7.

In support of this argument, defense counsel points to the following record evidence:

Defendant exhibited oppositional and behavioral problems from a young age.  (Feb. 15, 2022, Forensic Report at 4.)  She was expelled from school after the fifth grade

---

[7] Moreover, though in the context of social security cases rather than criminal proceedings, courts in this Circuit have held that "[a]bsent any evidence of a change in [a person's] intellectual functioning, it is appropriate to assume that [the person's] IQ has not changed." *MacMillan v. Astrue*, No. 1:07–CV–0959, 2009 WL 4807311, at *7 (N.D.N.Y. Dec. 7, 2009).  This general principle in that context, while in no way binding, further supports this Court's decision to credit Dr. Kissin's testimony on this issue.

[8] DSM is an acronym for Diagnostic and Statistical Manual of Mental Disorders.

due to anger problems and skipping school. *Id.* at 3. She has never been steadily employed. *Id.* She was evicted from her grandparents' home and a residential treatment facility for stealing. *Id.* In prison, she has not been able to follow routines, engage appropriately with individuals, or appropriately interact. Rather, she has been disciplined while in custody for flooding her cell, rubbing feces on herself, not following direct orders, damaging property, harming herself, committing arson, and making a weapon. *Id.* at 4. She exhibits poor impulse control, engaging in repeated instances of self-injurious behaviors such as cutting, biting herself, and inserting objects into her body. *Id.* at 5. She "manifests a notable lack of intellectual sophistication." *Id.* at 7.

ECF No. 55 at 6. In her testimony, Dr. Kissin noted that she considered Defendant's maladaptive behaviors such as those highlighted by defense counsel (counsel specifically questioned Dr. Kissin with respect to Defendant's behavior of "swallowing various objects that are harmful to her"). ECF No. 49 at 62-63. Dr. Kissin concluded that, while these behaviors are indeed maladaptive, they are part and parcel of Defendant's *mental health conditions*, not her *intellectual capacities*. *Id.* at 63. With respect to Defendant's intellectual capacity, Dr. Kissin opined that this determination, which is "pretty concrete," must be made through an examination of Defendant's "ability to interact, so again ask for things, talk to other people, ask questions, be able to understand them answering questions, knowing if she has a question." *Id.* at 64. Regarding these domains, Dr. Kissin's expert opinion, based upon her intensive examination of Defendant, is that Defendant is "functioning very consistently with someone in the borderline range" of intellectual functioning." *Id.* at 63.

The Court credits this analysis, coupled with Defendant's IQ test score, and finds, as Judge Payson did, that the record evidence supports Dr. Kissin's expert opinion that Defendant's intellectual functioning is "borderline" and that she is not presently intellectually disabled.

## II.   Understanding of the Charges and Possible Consequences

Next, Defendant objects to Judge Payson's finding that Defendant understands the charges against her and the possible consequences. ECF No. 55 at 7. In the R&R, Judge Payson found

Dr. Kissin's opinion that Defendant "was able to demonstrate an understanding of her charges and the possible consequences" to be "well-supported" by the record evidence.  ECF No. 52 at 17. Indeed, Judge Payson concluded that Dr. Kissin's testimony and expert report "clearly and persuasively support her opinion that [Defendant] is able to [understand the charges against her]." *Id.*  Defense counsel takes exception to this finding on several grounds.

First, defense counsel asserts that Dr. Kissin's opinion that Defendant understands the charges against her is belied by the fact that "Dr. Kissin testified that [Defendant] told her that one of the charges in this case is that [Defendant] put powder in a letter to Senator Chuck Schumer." ECF No. 55 at 7 (citing ECF No. 49 at 29-30).  Because "[t]hat is not one of the allegations in this case," defense counsel argues that this "evidence shows that [Defendant] does not understand the charges against her." *Id.*

> Judge Payson considered this argument in the R&R and concluded as follows:
>
> I disagree that this inaccuracy demonstrates her lack of understanding.  [Defendant] has been prosecuted previously for sending threatening letters and has apparently done so on numerous occasions.  Apparently at least one such letter stated that it contains "amtrhax."

ECF No. 52 at 16.  Indeed, Judge Payson considered this inaccuracy in the context of the other findings in Dr. Kissin's report and testimony: that Defendant "accurately recounted that she faces six felony counts of sending letters containing bomb threats to kill a federal judge and two members of Congress; each of whom she identified by name"; "understood that the charges carried possible terms of imprisonment and recalled that at least one charge carried a statutory maximum of ten years"; and described "the roles of the trial participants"; and other key aspects of the judicial process.  *See* ECF No. 52 at 16-17.

The Court agrees with Judge Payson that Defendant's inaccurate statement that her letter to Senator Schumer contained powder is not sufficient to outweigh the record evidence which

otherwise demonstrates an understanding of the charges against her.   Indeed, a defendant's understanding of the charges against her need not be perfect for a finding of competency.   *See United States v. Pope*, 146 F. App'x 536, 539 (2d Cir. 2005) (summary order) (finding that defendant's "letters to the court, although 'meandering,' as the court noted, and somewhat 'incoherent and rambling,' as [defendant] argues, did not indicate that he lacked a rational and factual understanding of the proceedings against him").   Dr. Kissin opined that, notwithstanding the inaccuracy regarding the powder, "all the charges that are in fact true [Defendant] was able to discuss."[9]   ECF No. 49 at 32.   The Court rejects defense counsel's argument and finds that a preponderance of the record evidence demonstrates that Defendant has a factual understanding of the charges against her.

Second, defense counsel argues that Judge Payson's finding that Defendant understands the charges against her and the possible consequences is undermined by Defendant's behavior in the courtroom during the evidentiary hearing.   ECF No. 55 at 7.   Her behavior, argues defense counsel, contradicts Dr. Kissin's opinion that Defendant demonstrated "appreciation of appropriate courtroom behavior" through her statement that, in court, a person must behave "like a human being . . . You can't yell, scream, get mad.   ECF No. 55 at 7.

Judge Payson considered this issue in the R&R, noting that while Defendant did not have any outbursts or engage in any disruptive conduct during the two-hour competency hearing, she

---

[9] Dr. Kissin's Forensic Report demonstrates that, outside of the inaccuracy related to powder, Defendant described the present charges both accurately and with specificity, even going so far as to relate them to prior charges she has faced for similar conduct:

> Ms. Nelson stated she was charged with "Six counts of threats, bomb threats, and terrorist threats." She stated, "The DA said I made a threat to Anthony Brindisi . . . A letter of a bomb threat . . . I think in 2019 . . . that I threatened Chuck Schumer . . . That I sent powder in a letter, a bomb threat ... that I'll blow him to pieces . . . and judge McAvoy, a federal judge from Binghamton, NY . . . It's the same judge as in 2007 . . . that I sent a letter in 2018 saying I will kill his family."

ECF No. 44 at 9.

"spent a significant amount of time with her head on the table." ECF No. 52 at 20. When Judge Payson asked Dr. Kissin during the hearing whether this conduct affects her assessment of Defendant's competence, Dr. Kissin replied that, despite Defendant's conduct at the hearing, Defendant "has the capacity to engage because [Defendant] had done so with [Dr. Kissin] for extended periods . . . and that there are times [Defendant] decides that she doesn't want to." *Id.* at 20-21 (citing ECF No. 49 at 93). Dr. Kissin indicated that Defendant putting her head on the table may be due to "poor stamina," "fatigue," "underlying health conditions," and/or because of her current medications. *Id.* at 21. Moreover, Judge Payson noted Dr. Kissin's findings that while Defendant's "willingness to engage" with others "varies," she had "sat through multi hour interviews with [Dr. Kissin] and other providers most of the time." *Id.*

While Defendant's behavior of placing her head on the table during the hearing standing alone could certainly suggest Defendant lacks an appreciation of appropriate courtroom behavior, the testimony and expert opinion of Dr. Kissin—who spent extended periods of time with Defendant—weigh against such a finding. Thus, the Court finds that a preponderance of the record evidence demonstrates that Defendant appreciates appropriate courtroom behavior and rejects defense counsel's argument to the contrary. *See United States v. Nichols*, 56 F.3d 403, 413 (2d Cir. 1995) (finding no clear error in determination that defendant was competent, in light of other evidence in the record, where defendant interrupted the court with "rambling statements" during the proceedings and "ha[d] on numerous occasions gotten on all fours, put his head close to the floor, and then stood up again").

Third, defense counsel contends that Defendant's "inability to understand the nature and consequences of the proceedings against her is linked to her limited intellectual abilities as well as to her mental illness." ECF No. 55 at 8. Moreover, counsel notes again that Defendant's IQ test

9

scores date back to 1992 and that "Dr. Kissin refused to perform a new IQ test on [Defendant] that would have included . . . subtests," which, counsel contends, would have provided additional insight into Defendant's ability to understand the nature and consequences of the proceedings.[10] *Id.* The Court rejects these arguments.

While the record indicates that Defendant's understanding of abstract concepts related to the proceedings may be somewhat impaired due to her borderline intellectual abilities,[11] Dr. Kissin's expert report and testimony show that Defendant has a basic of understanding of the adversarial nature of the judicial process, and an understanding of the difference between a plea of guilty, a plea of not guilty by reason of insanity, proceeding to trial and being found guilty or not guilty at trial, as well as the consequences of each result. *See* ECF No. 44 at 9-10.

Thus, despite her rudimentary understanding of abstract legal concepts and her borderline intellectual functioning, the Court finds that a preponderance of the record evidence establishes that Defendant understands the nature and consequences of the proceedings against her. *See United States v. Rodriguez–Leon*, 402 F.3d 17, 23 (1st Cir. 2005) (affirming competency finding where, while the "[defendant] could offer only a simplistic description of court proceedings, . . . he nonetheless could understand the roles of court proceedings and officials"); *United States v. Robinson*, 404 F.3d 850, 856–58 (4th Cir. 2005) (affirming competency finding despite testing indicating that defendant had an IQ of 70 in the "borderline" range and that defendant had a "variety of mental disorders").

---

[10] In addition to Dr. Kissin declining to administer a new IQ test, "[t]he defense was not able to obtain new scores for those subtests because [Defendant] refused to meet with the expert retained by defense counsel." *Id.*

[11] For instance, as Judge Payson indicated, Defendant "had difficulty explaining the underlying concept of protection against self-incrimination." ECF No. 52 at 17.

Finally, defense counsel attacks Dr. Kissin's methodology, which counsel argues, "overstates the degree to which [Defendant] is able to understand the nature of the proceedings." ECF No. 55 at 8-9.  Specifically, counsel asserts that Dr. Kissin: "corrected [Defendant] when [Defendant] provided incorrect definitions and understandings of the legal process"; "admitted that [Defendant] was able to provide correct answers only after being coached"; "admitted she made no effort to determine whether or not [Defendant] retained the information after a few minutes"; "admitted that [Defendant] was not able to talk about legal issues, such as the protection against self-incrimination, in the abstract"; and did not "re-question" Defendant about abstract issues to determine retention of information.  *Id.*

Defense counsel's issues with Dr. Kissin's methodology seek a higher bar for competency than the law requires.  "[T]he standard of legal competency does not require knowledge of 'legal terms and vernacular of attorneys and judges.'"  *United States v. Allen*, No. 10–80175–Cr, 2011 WL 4352793, at *25 (S.D. Fla. Aug. 26, 2011) (quoting *United States v. McFall*, No. 07–411, 2011 WL 465718, at *9 (W.D. Pa. Feb.4, 2011)).  An "understanding of the legal process and functions of the court officials" that is "at best simplistic and primitive" is not inconsistent with a finding of competency.  *See Rodriguez–Leon*, 402 F.3d at 23.  Moreover, Dr. Kissin's testimony demonstrates that Defendant's retention was evidenced by her use of "concepts in answering other questions."  ECF No. 49 at 77.

Like Judge Payson, this Court finds that Dr. Kissin's testimony demonstrates that she is "a credible expert witness."  ECF No. 52 at 22.  Moreover, the Court agrees that Dr. Kissin's "experience, thorough evaluation, and clear and persuasive report and testimony lead [this Court] to accept her conclusions as to [Defendant's] diagnosed mental health disorders and credit her

competency findings." *Id.* Accordingly, the Court rejects defense counsel's arguments regarding Dr. Kissin's methodology.

### III. Ability to Assist in Defense

Defense counsel's final objection is that the record evidence does not demonstrate that Defendant is able to assist in her defense. ECF No. 55 at 9-18. In asserting this objection, counsel raises numerous sub-arguments. *Id.*

First, defense counsel takes issue with Dr. Kissin's finding, accepted by Judge Payson, that Defendant's "interpersonal difficulties do not result from delusional disorder, but from personality disorder." ECF No. 52 at 18. Specifically, counsel asks this Court to "reject the Report & Recommendation's finding that [Defendant] is competent on the basis that she has not been diagnosed with delusional disorder." ECF No. 55 at 12-13. The Court rejects this argument and finds that a preponderance of the evidence supports Dr. Kissin's finding that when Defendant made false statements they did not stem from a fixed false belief, which would suggest a delusional disorder, but rather were the result of "some other motivation, such as to provoke, manipulate, or terrorize." *See* ECF No. 49 at 42-43, 47, 54; *see also United States v. Lindauer*, 448 F.Supp.2d 558, 562 (S.D.N.Y. 2006) ("[I]t is only the delusions—false fixed beliefs—that interfere significantly with defendant's ability to assist in her own defense; it is not the hallucinations or the mood disorder.").

Next, defense counsel argues that Defendant lacks the capacity to consult with her attorney. While the record does include instances where Defendant has refused to cooperate with her attorneys, the Court finds that the preponderance of the record supports a finding that Defendant has the *ability* to assist in her defense, notwithstanding the fact that she does not always choose to do so. Indeed, the Court accepts Dr. Kissin's expert findings that Defendant's "refusing to speak

with [counsel] would not have anything to do with capacity, it would be with her will at that time."
ECF No. 49 at 67-68.   Dr. Kissin also opined, based upon her expertise, that Defendant's
difficulties in continuing conversations did not mean that she did not actually possess the "capacity
to consult."   *Id.* at 70-72.   Importantly, as noted above, Dr. Kissin specifically found through her
own experience of meeting with Defendant over a span of two months that, while Defendant's
"willingness to engage" with others "varies," she proved capable of doing so "most of the time."[12]
*Id.* at 71.

Next, defense counsel asks this Court to "reject the Report & Recommendation's finding
that [Defendant's] complaints about defense counsel stem from a rational understanding of the
case."  ECF No. 55 at 14.  Specifically, counsel points to Defendant's complaint that counsel "just
collects my medical and health records and sends me paperwork" as evidence that Defendant "does
not comprehend that her medical and mental health records are valuable evidence in her case," nor
does she comprehend that such "paperwork from her attorney contains information about potential
defense strategies."  *Id.*

The Court does not read Defendant's complaint so narrowly, nor as demonstrating a lack
of understanding.  It is equally consistent with general frustrations that she, perhaps unreasonably,
expects counsel to do something more at this juncture—even if the posture of the case does not

---

[12] Indeed, Dr. Kissin's Forensic Report states that:

> On one occasion [Defendant] cut the interview short, indicating she "cannot do this," and "can't answer."   However, at the next scheduled meeting, she apologized for her previous behavior, indicating she was not feeling well at the time, and exhibited no further difficulty completing the interview sessions.

ECF No. 44 at 9.

call for it.[13]   Moreover, Defendant's statement to Dr. Kissin that she, in lieu of a plea deal, "may choose to plead [not guilty by reason of insanity], and use her extensive mental health records to substantiate the plea" clearly demonstrates that she appreciates the importance of her mental health and medical records.  ECF No. 44 at 10.  Accordingly, the Court rejects this argument.

Next, defense counsel requests that this Court "reject the Report & Recommendation's finding that [Defendant] has the capacity to make decisions that a defendant is required to make during a prosecution."  ECF No. 55 at 15.  In support of this request, counsel asserts that "[e]ven if [Defendant] were able to control her frustration long enough to make a decision, making decisions in a criminal case requires that a defendant communicate those decisions to counsel" and Defendant "refuses to communicate" with counsel.  *Id.*  As explained above, Defendant's *ability* to work with counsel and willingness to do so are two separate matters.  *See United States v. Lyttle*, No. 05–CR–6116, 2009 WL 2390608, at *7 (W.D.N.Y. July 31, 2009) ("While the defendant may have been a difficult client with respect to his refusal to consider a plea agreement and his commitment to his own particular strategy of defense . . . this does not mean that he lacks the ability to assist his attorney.").  The Court finds that a preponderance of the record evidence, particularly Dr. Kissin's expert report and testimony, support a finding that Defendant has the capacity to make decisions that she will be required to make during a prosecution.[14]

---

[13] The Court agrees with Judge Payson's finding in this regard: "Thus, it appears that [Defendant's] complaint may have stemmed from her frustration or belief that too much emphasis was being placed on her mental health issues rather than the non-intent aspects of the charges."  ECF No. 52 at 19.

[14] This is especially supported by Dr. Kissin's Forensic Report.  In that report, Dr. Kissin noted that Defendant: (1) expressed familiarity with the concept that she had the right not to testify, stating, "No, I don't have to testify . . . I have the right not to talk"; (2) was able to describe the potential consequences of taking a plea (despite some initial frustration with Dr. Kissin's questions on this matter); and (3) was able to offer insight into how she would like her case to proceed ("Ms. Nelson said she would have preferred to take a plea, but she is not aware that a plea deal had been offered.  She said in lieu of a plea deal she may choose to plead NGRI, and use her extensive mental health records to substantiate the plea.").  ECF No. 44 at 10.

Next, defense counsel argues that Defendant's courtroom behavior during the competency hearing "goes to the heart of the attorney-client relationship and the ability to assist with the defense." ECF No. 55 at 16. Thus, counsel requests that this Court "reject the Report & Recommendation's finding that [Defendant] is able to appreciate appropriate courtroom behavior. *Id.* The Court considered this argument above, *see supra* 8-9, and, for all the reasons previously stated, rejects it and finds that Defendant is able to appreciate appropriate courtroom behavior.

Next defense counsel asserts that Judge Payson erroneously considered the following as evidence supporting her conclusion that Defendant is competent: (1) Defendant's cooperation with Dr. Kissin as tending to prove that she has the ability to assist counsel; and (2) that Defendant was previously adjudged competent in a 2006 federal case where she faced similar charges, pled guilty, and was represented by the same federal public defender who was assigned at her initial appearance through resolution as tending to prove that it may be possible for counsel here to "forge a sufficiently functional relationship with [Defendant]" to carry this case forward. ECF No. 52 at 21, 23; ECF No. 55 at 16-17.

Defense counsel cites no case law for the proposition that the Court cannot consider this evidence when examining the record evidence as a whole and determining whether, by a preponderance of the evidence, Defendant can assist in her defense. Accordingly, the Court rejects these arguments as inadequately raised. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

Penultimately, defense counsel asks the Court to reject Judge Payson's finding that Defendant's "currently-prescribed medication renders her able to assist in her defense." ECF No. 55 at 16. In support of this argument, counsel states that this finding "is utterly contradicted by

the record" because "[d]efense counsel raised the issue of competency more than six months *after* the medication was prescribed."  ECF No. 55 at 16 (emphasis in original).

The Court rejects this argument because it endorses a different view of Dr. Kissin's expert findings regarding Geodon, one of Defendant's medications.  Dr. Kissin did not suggest that Geodon enabled Defendant to assist in her defense.  Rather, Dr. Kissin simply noted two things: (1) that, based upon her observations and review of Defendant's records, the medication helped Defendant manage some of her behavioral problems; and (2) because Defendant was not always compliant with her medication, Dr. Kissin observed that "when [Defendant is] not on medication, she is much more provocative, she engages in self-harming behaviors, she engages in a lot of opposition behaviors."  ECF No. 44 at 10; ECF No. 49 at 21, 36.  Thus, nothing in Dr. Kissin's expert findings is inconsistent with the fact that defense counsel raised the issue of competency over six months after Geodon was prescribed.  Accordingly, the Court rejects this argument.

Finally, defense counsel asks the Court to reject Judge Payson's "proposed solution" of traveling to FMC Devens to meet with Defendant.  ECF No. 55 at 18.  At the outset, an attorney's logistical difficulty in meeting with his or her client has no bearing on whether Defendant is competent.  In any event, counsel notes, *inter alia*, that legal visits at Devens are only permitted on Thursdays and, should counsel appear to meet with Defendant and Defendant refuse, "counsel's only option would be to return one week later."  *Id.*  The Court appreciates the position that defense counsel is in trying to manage an attorney-client relationship over distance and agrees with Judge Payson's characterization of defense counsel as "clearly experienced, intelligent, careful, and thorough."  ECF No. 52 at 23.

However, "[d]isputes between criminal defendants and their attorneys are not at all uncommon," *United States v. Kerr*, 752 F.3d 206, 218 (2d Cir. 2014), and a defendant's "lack of

desire to help her attorney is different than an inability to do so," *United States v. Cunningham*, 556 F. Supp. 2d 968, 976 (S.D. Iowa 2008) ("Added difficulty for counsel in communicating with a Defendant due to a mental impairment of some sort does not, however, make the Defendant incompetent to stand trial."). Accordingly, the Court rejects this argument.

For all the reasons stated above, the Court finds by a preponderance of the evidence that Defendant is not presently suffering from a mental disease or defect that would render her incompetent within the meaning of 18 U.S.C. § 4241. However, should the facts and circumstances of this case change, counsel may request further competency proceedings should reasonable cause develop to believe that Defendant is no longer competent to stand trial.

## CONCLUSION

For the foregoing reasons, the Court adopts Judge Payson's R&R, ECF No. 52, and Defendant's motion, ECF No. 55, is DENIED.

IT IS SO ORDERED.

DATED:        November 9, 2022
              Rochester, New York


                              _____
                              HON. FRANK P. GERACI, JR.
                              United States District Judge
                              Western District of New York